[Civ. No. 5185.   Third Appellate District.—March 19, 1935.]

## GRACE E. COLLINS, Respondent, v. I. D. HODGSON et al., Appellants.

[Civ. No. 5186.   Third Appellate District.—March 19, 1935.]

## JOHN A. COLLINS, Respondent, v. I. D. HODGSON et al., Appellants.

[Civ. No. 5187.   Third Appellate District.—March 19, 1935.]

## ALICE SIMONTON, Respondent, v. I. D. HODGSON et al., Appellants.

[Civ. No. 5188.   Third Appellate District.—March 19, 1935.]

## GEORGE SIMONTON, Respondent, v. I. D. HODGSON et al., Appellants.

Inman & West and A. G. Bailey for Appellants.

Ingemar E. Hoberg and Murle C. Schreck for Respondents.

PULLEN, P. J.—This action was brought against defendants for injuries sustained in a collision between two automobiles. The jury returned a verdict in favor of defendants and a judgment was entered accordingly. Thereafter upon a motion for a new tial, the same was granted upon grounds other than the insufficiency of the evidence to justify the verdict. It is from these orders granting a new trial that defendants appeal.

On the morning of the accident plaintiffs herein, Mr. and Mrs. Collins and Dr. and Mrs. Simonton were proceeding westerly along the state highway in the county of Yolo, in the automobile of Mr. Collins, which was being operated by Dr. Simonton. For some distance plaintiffs had been traveling about fifty feet in the rear of a car owned by defendant I. D. Hodgson and driven by defendant C. E. Hodgson. When the cars had reached a point approximately two miles west of Sacramento, defendant stopped, and the car of plaintiff struck the rear left corner of defendants' car causing plaintiffs' car to swerve across the highway to the left, and after traveling approximately 65 feet struck a tree at the side of the road, causing the injuries of which complaint is here made.

It is the contention of plaintiffs that defendant stopped suddenly in the middle of the right side of the road, which

at that point was a two-lane highway, so indicated by a white line down the center. Plaintiffs were traveling about 50 feet behind defendant and saw no signal of defendant's intention to stop and it was not testified by defendant that he gave any signal that he was intending to stop or change his course. Plaintiffs admitted that they saw defendants' car begin to slacken speed when they were approximately 50 feet away. Defendant claims he was in the act of driving off the highway and had not stopped when struck by plaintiffs. A traffic officer testified, that according to measurements of the tracks taken by him, the collision occurred 18 inches from the right or north edge of the highway:

██ As to the granting of a new trial it is said:

"That the granting of a new trial is a thing resting so largely in the discretion of the trial court that its action in that regard will not be disturbed except upon the disclosure of a manifest and unmistakable abuse, has become axiomatic, and requires no citation of authority in its support. It is true that such discretion is not a right to the exertion of a mere personal or arbitrary will of the judge, but is a power governed by fixed rules of law, and to be reasonable, exercised within those rules, to the accomplishment of justice. But so long as a case made presents an instance showing a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be here set aside, even if, as a question of first impression, we might feel inclined to take a different view from that of the court below as to the propriety of its action." (*Harrison* v. *Sutter Street Ry. Co.*, 116 Cal. 156 [47 Pac. 1019, 1020].)

██ Furthermore, a stronger showing is required to justify interference with an order granting than one refusing a new trial. We therefore undertake the examination of the questions here presented with these general rules in mind.

██ The principal objections urged upon the motion for a new trial were as to certain instructions, and errors alleged to have been committed in the admission of certain evidence.

The first instruction criticised, number 28, proposed by defendant and given by the court, reads:

"When a person by his own observation has knowledge that a vehicle driven and operated by another is slowing

down, changing its course or stopping, this knowledge is just as binding and effective on such person as if the operator of the vehicle ahead had given the hand signals required by the California Vehicle Act. No man has a right to shut his eyes as to what is to be seen. It is a part of the duty of the operator of a motor vehicle to keep his machine always under control so as to avoid collisions with other vehicles' using the highway. He must be vigilant at all times and must anticipate and expect that other drivers will complete what they evidently began to do and of which the operator has knowledge from his own observation.

"Therefore, if you find that George Simonton after such knowledge on his part had the time and space within which to act and failed and neglected to heed such warning and failed and neglected to get his own vehicle, or the vehicle which he was driving under control, then such conduct on the part of George Simonton was negligence and if such negligence was the sole cause of the collision or proximately contributed thereto, then neither the said George Simonton nor his wife, Alice Simonton can recover any damages from the defendant.

"You are further instructed that under the above circumstances, if the owner of the car, John A. Collins, was riding therein, and that the operator of the car, George Simonton, was driving the said car with the permission, express or implied, of the owner then the negligence of the operator is imputed to the owner and neither the owner John A. Collins, or his wife, Grace M. Collins, can recover from the defendants and your verdict will be for the defendants. (*Meyers* v. *Bradford,* 54 Cal. App. 157 [201 Pac. 471]; *Greybiel* v. *Auger,* 64 Cal. App. 679 [222 Pac. 635–639].)"

This instruction requires a reference to the California Vehicle Act—that portion thereof being material here, reading as follows:

"Sec. 130 (a). The driver of any vehicle upon a public highway before starting, turning or stopping such vehicle shall first see that such movement can be made in safety, and if it can not be made in safety, shall wait until it can be made in safety; then, if the operation of any other vehicle may reasonably be affected by such movement, the driver shall give a signal plainly visible to the driver of

such other vehicle of the intention to make such movement. . . . ''

We believe the instruction as given was ambiguous and misleading. The purport of the instruction seems to be that when a person observes that a vehicle is slowing down or changing its course this knowledge is just as binding and effective as if the signal required by the act were given. This is not in accordance with the section, which requires that *before* the act is done the driver shall see that such movement can be made with safety and shall then give the required signal of his *intention* so to do, thereby giving to the operator of the car to the rear, time to meet the changed conditions. It is admitted plaintiff saw the forward car slowing down but to hold that is as binding and effective as a prior signal has the effect of nullifying the failure of his right to rely upon the provision of the act that a warning in advance of stopping would be given.

In the case of *Olsen* v. *J. J. Jacobs Motor Co.*, 99 Cal. App. 423 [278 Pac. 1051], it was held: ''Up until this moment of time we think that plaintiff by his testimony showed that he had a right to assume that the driver of the Motor Company car would obey the law''; and also in *Moreno* v. *Los Angeles Transfer Co.*, 44 Cal. App. 551 [186 Pac. 800], ''Contributory negligence cannot be predicated upon an omission to assume that another will violate the law.'' (*Medlin* v. *Spazier*, 24 Cal. App. 242 [137 Pac. 1078]; *Raymond* v. *Hill*, 168 Cal. 473 [143 Pac. 743].)

The instruction also is open to criticism in that it assumes that the driver of the car had ''such knowledge'', that is that degree of knowledge which was as effective as if the signal required by law had been given, which is an assumption of a fact that was solely within the province of the jury.

Another criticism directed to the instruction is that it states that if the driver had the time and space within which to act, and failed and neglected to heed such warning, and neglected to get his own vehicle under control, he was negligent. This does not correctly state the degree of care required. It is the care of an ordinary prudent man and not the care of a particular individual that governs the question of negligence. Attention is also directed to the instruction in that it states that if Simonton,

after such knowledge on his part, had the time and space within which to act and failed to heed such warning, such conduct was negligence. This is ambiguous and unintelligible as it is apparent that he did act, and therefore having acted, and the collision having occurred notwithstanding his action, the jury may have inferred that they were directed to, and therefore did, find him guilty of contributory negligence.

■ Complaint is also made of instruction No. 35, submitted by defendant and given by the court, which reads as follows:

"You are instructed, that the statute requiring the driver of a vehicle upon the public highways of this state upon stopping or turning or changing its course to make hand signs, is for the warning of those who may be affected by the movements of the driver of the automobile.

"However, if an operator of an automobile, following another car, observes that the car ahead is slowing down and changing its course, the operator of the following car must take the same precautions to get his car under control as if a hand sign had been given by the operator of the leading car. If upon observing a car slowing down and changing its course, the driver of the car behind fails to get his car under control, as required by law and a collision is the proximate result of the driver's failure to control his car then the driver of the car behind is guilty of negligence which will prevent him from recovering anything from the defendant."

The vice of this instruction lies in the fact that it also omits any reference to ordinary care, and the essential elements of conditions, time and space surrounding the collision, and the right of plaintiff to assume until the same reasonably appeared that the defendant would first see that the movement could be made in safety, and give the warning required by section 130 (a) of the California Vehicle Act. ■ The instruction required further that the driver of the car to the rear, upon observing the car ahead to be slowing down or changing its course, to get his car under control as required by law. That, too, goes beyond the requirement of the act. The law does not require, regardless of circumstances, that the car shall always be under the same degree of absolute control. One degree of control might be exacted of a driver in the daytime upon a straight

way unobstructed by other vehicles, and another degree of care exacted of one driving in heavy traffic or at night and in imminent danger of collision. The test of negligence therefore is not to be measured irrespective of circumstances but has to do with the surrounding conditions and the exercise of ordinary care. If plaintiffs exercised ordinary care but the negligence of defendant deprived plaintiffs of control over their car they are thereby not barred from recovering.

Other instructions are cited and criticised for various reasons. We do not believe that it is necessary to discuss them further, sufficient having been said to show that the trial court was justified in the granting of a new trial, and undoubtedly upon the next trial, by reason of the study and criticism of those questioned instructions not here considered, the same errors and ambiguities will not again appear.

Objection also is made to a certain question and answer of defendant, as follows: ''Mr. Hoberg. Just immediately prior to that time, you have no recollection of holding any hand out to warn anybody behind, have you? A. No, I don't know whether I did, or I did not. *It is second nature with me to stick my hand out when I am going to stop.*'' That portion of the answer italicized was improper, although no reason was assigned for the motion to strike. However, neither court nor counsel seemed to have waited for a statement of the reason, they undoubtedly assuming that counsel had in mind the proper grounds as undoubtedly had all the parties concerned. The objectionable portion of the answer was repeated, however, in the answer following, to which a motion to strike was made, the grounds were then correctly specified. The ruling of the court denying this latter motion was erroneous, and in view of the answer the trial court may well have assumed that it was prejudicial to the rights of plaintiffs.

Inasmuch, therefore, as the erroneous instructions were given, and the orders granting a new trial were clearly not an abuse of discretion, and no legitimate complaint of the exercise of this right by the trial court can be made, it is the order of this court that the orders appealed from be affirmed.

Plummer, J., and Thompson, J., concurred.